UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JEFF PITTENGER, | ) | |
| | ) | Case No. 1:09-CV-00563 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| JOHN SOLIDAY FINANCIAL GROUP, LLC, et al., | ) ) | |
| | ) | |
| Defendants. | ) ) | MEMORANDUM AND ORDER |

Before this court is a motion for summary judgment filed by defendants John Soliday Financial Group, LLC ("JSFG") and the Cheek Law Offices ("Cheek"). [Dkt.19]. Also before this court is a motion for partial summary judgment filed by plaintiff Jeff Pittenger ("Pittenger"). [Dkt. 20]. For the following reasons, JSFG's and Cheek's motion for summary judgment is granted and Pittenger's motion for partial summary judgment is denied.

**I.  BACKGROUND**

The parties agree on the following facts: Pittenger purchased a 1999 Saturn on February 24, 2005 from Pro Car Auto Group Inc. [Dkt. 19-2]. The sale contract included a provision that immediately assigned the contract to Atlantic Financial Services Inc. ("Atlantic"). Pittenger eventually defaulted on the loan, and JSFG, as the alleged owner of the debt, filed suit against Pittenger in state court to collect the $7,479.62 balance. Cheek filed the suit on behalf of JSFG. As an attachment to the state court complaint, JSFG and Cheek filed the contract at issue and a document that contained Pittenger's social security number, date of birth, and other personal information. [Dkt. 22].

The parties disagree about how or whether JSFG came to be the legal owner of the debt.  JSFG claims that Atlantic sold the account to Ameristar Financial Servicing Company LLC ("Ameristar") on December 19, 2007.  Ameristar immediately sold the account to JSFG on December 19, 2007.  Thus, the chain of title, according to JSFG, was as follows: (1) Pro Car Auto Group Inc.; (2) Atlantic; (3) Ameristar; and (4) JSFG.

Pittenger, however, claims that a Bill of Sale and Assignment produced during discovery shows that a company named Atlantic Financial Services LLC assigned the debt to Ameristar Financial Company LLC. [Dkt. 20-4].  Thus, Pittenger argues that JSFG must prove, at least, that the chain of title is as follows: (1) Pro Car Auto Group Inc.; (2) Atlantic; (3) Atlantic Financial Services LLC; (4) Ameristar Financial Company LLC; (5) Ameristar; and (6) JSFG.  Because there is no record showing that Atlantic sold the account to Atlantic Financial Services LLC or that Ameristar Financial Company LLC sold the account to Ameristar, Pittenger claims that JSFG cannot prove that it owned the debt.

## II.    STANDARD

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986)*; *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004).  If the movant succeeds, the burden then shifts to the nonmoving party to demonstrate the existence of a material dispute as provided in Rule 56(e)(2):

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial.

FED. R. CIV. P. 56(e)(2); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). Parties opposing summary judgment must go beyond the pleadings and produce some type of evidentiary material in support of their position. *See Celotex,* 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, this court must view all of the evidence in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157 (1970); *Hamby v. Neel,* 368 F.3d 549, 556 (6th Cir. 2004); *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson,* 477 U.S. at 248. An issue is "genuine" if the evidence is such that a reasonable juror "could find by a preponderance of the evidence that the [nonmoving party] is entitled to a verdict" or whether the evidence is "so one-sided that [the moving party] must prevail as a matter of law." *Id.* at 252. General statements or conclusory allegations do not create specific fact disputes "showing that there is a genuine issue for trial." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

### III.   DISCUSSION

All parties agree that three issues lie at the heart of this case: (1) whether JSFG owns Pittenger's account; and (2) whether JSFG and Cheek's disclosure of Pittenger's social security number, birth date, and other personal information violated the Fair Debt Collection Practices Act ("FDCPA"); and (3) whether the disclosure violated the Ohio Consumer Sales Practices Act ("OCSPA").

#### A.   Admissibility of the Dunn and Bowman Affidavits

JSFG claims that the Bill of Sale and Assignment showing that "Atlantic Financial Services LLC" sold the account to "Ameristar Financial Company LLC" contained typographical errors. Specifically, JSFG claims that the correct names of the buying and selling companies were omitted. "Atlantic Financial Services LLC" should have read "Atlantic Financial Services Inc.," and "Ameristar

Financial Company LLC" should have read "Ameristar Financial Servicing Company LLC." In support of this proposition, JSFG filed affidavits written by William H. Dunn ("Dunn"), the Vice President of Ameristar, and Robert L. Bowman ("Bowman"), the Secretary of Atlantic. [Dkt. 19-10 and 19-11]. Both Dunn and Bowman state that the Bill of Sale and Agreement reads in error because the buying and selling entities' correct names were not used.

Pittenger argues that the second Dunn affidavit is inadmissible on several grounds. First, Pittenger claims that Dunn's affidavit testimony constitutes inadmissible hearsay. This contention is without merit. "A [party] is entitled to state its legal positions and bring business documents into the summary judgment record via an affidavit of [one of the parties' officer[s]." *Brown v. BKW Drywall Supply, Inc.*, 305 F. Supp2d 814, 822 (S.D. Ohio 2004) (citing *Human Res. Inst. of Norfolk, Inc. v. Blue Cross of Va.*, 484 F. Supp. 520, 525-26 (E.D. Va. 1980)). Moreover, Dunn clearly stated in his first affidavit that "he maintains the books and records of the company" which are "kept in the ordinary course of business." [Dkt. 19-4, at 1]. As such, he meets the criteria under the business records exception to the hearsay rule. *See* FED. R. EVID. 803(6).

Next, Pittenger argues that the redacted document submitted by Dunn violates the best evidence rule. According to Pittenger, Dunn should have produced the original and complete "Account Schedule," showing all 2,516 accounts purchased by Ameristar, rather than the "redacted spreadsheet," showing only Pittenger's account.[1] Federal Rule of Evidence 1003 states that "[a] duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the

---

[1] The Account Schedule that Pittenger wants disclosed in full was redacted in order to protect the confidential information of other account holders.

original." FED. R. EVID. 1003. Here, JSFG and Cheek have submitted a duplicate. Pittenger does not argue that the original document's authenticity is in doubt or that it would be unfair to admit the duplicate. He merely argues that the original document should have been filed. Consequently, the redacted spreadsheet does not violate the best evidence rule and is admissible.

Pittenger also argues that both Dunn's and Bowman's affidavits should be excluded because "neither the affidavits, nor the allegations therein were disclosed in relevant discovery requests before the close of discovery." [Dkt. 23, at 4-5]. Dunn's and Bowman's names were disclosed throughout the discovery process and Pittenger was on notice of their potential testimony. In fact, Bowman signed the Bill of Sale and Assignment upon which Pittenger's argument rests. There is no evidence suggesting that the defendants "hid[] critical evidence in discovery," as Pittenger alleges. [Dkt. 23, at 4].

Next, Pittenger argues that the Bill of Sale and Assignment is not ambiguous and that parol evidence from Dunn and Bowman should not be admitted. This court, however, finds that the contract is ambiguous because the Bill of Sale and Assignment lists the sole seller by two different names: "Atlantic Financial Services, LLC" and "Atlantic Financial Services Inc. Corporation." This discrepancy creates ambiguity sufficient to warrant the introduction of extrinsic evidence, such as the affidavits of Dunn and Bowman.

Finally, Pittenger argues that JSFG and Cheek did not lay a proper foundation to establish Dunn's competence to testify as to the typographical error in the Bill of Sale and Assignment. This argument is also without merit. Dunn clearly stated in his affidavit that he "has personal knowledge and is competent to testify as to the matters contained" in the affidavit. As Ameristar's vice president, he also testified that he maintained the books and records of the company and that he had personal knowledge of the transaction that took place between Atlantic and Ameristar. [Dkt. 19-4, 19-10].

Accordingly, the affidavits of Dunn and Bowman are admissible.

**B.  Ownership of Pittenger's Account**

Pittenger claims that JSFG and Cheek were not authorized to collect on the debt because JSFG was not the owner of the debt. The evidence submitted by JSFG and Cheek clearly proves otherwise. Pro Car Auto Group Inc. assigned Pittenger's account to Atlantic. [Dkt. 19-2]. Atlantic sold the account to Ameristar. [Dkt. 19-4, 19-10, 19-11, 20-4]. Ameristar sold the account to JSFG. [Dkt. 20-3]. Consequently, JSFG is the owner of the account and was entitled to collect upon the debt. Pittenger has offered no evidence, other than pointing to the typographical error in the Bill of Sale and Assignement, to support a different conclusion. Therefore, JSFG and Cheek's attempt to collect the debt was not unauthorized, unfair, or unconscionable.

**C.  Disclosure of Pittenger's Personal Information under the FDCPA**

Pittenger also claims that JSFG and Cheek violated the FDCPA by publicly disclosing his social security number, birth date, and other personal information in a state court filing. At least one other federal court, however, has found that the disclosure of a social security number in a legitimate court filing does not violate the FDCPA:

> [W]e do not think that filing an exhibit in a lawsuit is conduct, the natural consequence of which is to harass, abuse or oppress. The document containing [the plaintiff's] social security number was a copy of the application for credit at issue in the case, was relevant to the case, and was legitimately filed . . . . [T]his is not the type of behavior contemplated by §1692d.

*Feltman v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, No. 06 C 2379, 2008 WL 5211024, at *4-5 (N.D. Ill. Dec. 11, 2008). This court agrees with the *Feltman* court's analysis and conclusion. JSFG and Cheek filed a relevant exhibit in a legitimate lawsuit that happened to contain personal information. This does not constitute conduct, the natural consequence of which is to harass, abuse or oppress, within

the meaning of the FDCPA. Accordingly, this court finds that the disclosure of Pittenger's social security number and other personal information did not violate the FDCPA.[2]

**D.     Disclosure of Pittenger's Personal Information under the OCSPA**

Pittenger next claims that the disclosure violated the OCSPA. Ohio Revised Code § 1345.02(A) provides that "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction" and § 1345.03(A) similarly provides that "[n]o supplier shall commit an unconscionable act or practice in connection with a consumer transaction." Unfair, deceptive, or unconscionable acts violate these sections whether they occur before, during or after the transaction. *See* §§ 1345.02(A) and 1345.03(A). The statutes then list several circumstances and factors that courts must consider in determining whether an act or practice is unfair, deceptive, or unconscionable. *See* Ohio Rev. Code § 1345.02(B) and § 1345.03(B).

In support of his assertion that the disclosure violated the OCSPA, Pittenger relies upon language contained within an order entered by the Green County Court of Common Pleas in *Veverka v. Miles*, 2007.CV.0594 (Green Ct. Common Pl. Dec. 26, 2007). [Dkt. 20-9]. This order, however, was a consent decree and order agreed to by the parties, and the court made no finding as to whether the described acts violated the OCSPA. *See id.* at 3 ("It is an unconscionable act in violation of R.C. 1345.03(A) for a supplier to knowingly disclose or publish or release the nonpublic public information of a consumer. The Court makes no finding that it did or did not occur in this case.") Furthermore, this court is not bound by the *Veverka* court's order and is persuaded by the analogous circumstances and reasoning described in *Feltman*. The defendants' disclosure of Pittenger's social security number and other

---

[2] The better practice would be to redact personal identifying information which is not in any way relevant to an issue in dispute.

personal information in an exhibit that was relevant to a legitimate lawsuit is not the type of unfair, deceptive, or unconscionable act or practice contemplated by the OCSPA. None of the circumstances or factors listed in §§ 1345.02(B) and 1345.03(B) comes close to describing the defendants' alleged acts. Accordingly, this court finds that the defendants' disclosures in this circumstance did not violate the OCSPA.

**IV.    CONCLUSION**

For the foregoing reasons, JSFG and Cheek's motion for summary judgment is granted and Pittenger's motion for partial summary judgment is denied. This order is final and appealable.

IT IS SO ORDERED.

*/s/Dan Aaron Polster*
DAN AARON POLSTER
UNITED STATES DISTRICT JUDGE


**Dated:** *May 10, 2010*